390 So.2d 332 (1980)
Windford MINES, a/K/a Jasper Mines, Appellant,
v.
STATE of Florida, Appellee.
No. 50996.
Supreme Court of Florida.
September 25, 1980.
Rehearing Denied December 8, 1980.
*333 Richard L. Jorandby, Public Defender, Craig S. Barnard, Chief Asst. Public Defender, and Jerry L. Schwarz and Richard B. Greene, Asst. Public Defenders, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
This is an appeal from convictions of first-degree murder and aggravated battery in a nonjury trial. The appellant was sentenced to death for the first-degree murder conviction without jury participation and was sentenced to fifteen years for the aggravated battery conviction. We have jurisdiction.[1]
For the reasons expressed we affirm the convictions but find error in the imposition of the death sentence and remand for reconsideration of the appropriate sentence.
The relevant facts reflect that the appellant, Windford Mines, was identified as the man standing by a van which was nosed into a ditch alongside Route 60 in Indian River County. The appellant was waving for help, and a Mr. Chester Earl Smith stopped to render assistance. The appellant told Mr. Smith that there had been an accident and someone was badly hurt. Mr. Smith proceeded to search for the injured person, and in the process of this search appellant pounded Mr. Smith against the truck and said, "Move, or I'll kill you." A brief chase ensued, but the appellant caught Mr. Smith and struck him with a machete blade on the side of the head. Appellant then took Smith's car keys and drove away. An off-duty officer, Deputy Gibbons, was driving on Route 60 and noticed a black *334 male driving in the opposite direction at a high rate of speed. Further down the road Gibbons spotted the van in the ditch with Mr. Smith alongside it. Inside the van Gibbons found the naked body of a dead woman, which was still warm. Other investigating officers later arrived, and a crime scene search was conducted. Their search revealed that there were five knife wounds in the chest, throat, hand, and wrist of the dead woman. Her ankles were bound with black electrical tape, and her wrists had apparently been bound with her undergarments. A fishing knife which appeared to have blood on it was found on the dashboard of the van. A medical examiner determined that the victim had been dead for less than six hours plus or minus two hours. After conducting an autopsy, he also determined that the cause of death was a stabbing, cutting-like injury into the right side of the heart.
After appellant fled the scene in Mr. Smith's car, he drove to a motel in Polk County, Florida, where he took a woman hostage. A resident of the motel testified that appellant stated he would kill the hostage if anyone broke down the door. Appellant further stated, "I have already killed this morning, I have nothing more to lose today." When told that the people had not died and were all in the hospital, appellant replied that the men might be but not the girl because nothing was going to bring her back to life.
The competency of the appellant to stand trial as well as a plea of insanity were substantive issues considered by the trial court. Appellant was indicted on December 2, 1975; on April 30, 1976, he was found incompetent to stand trial and was committed to the Division of Mental Health. In October, 1976, he was found competent to stand trial by the psychiatrist at the state hospital. A similar finding was made by the psychiatrist who had previously found him to be mentally incompetent and unable to assist counsel in his defense. All psychiatric examinations found and diagnosed appellant as being schizophrenic, chronic paranoid type. Another sanity hearing was held in December of 1976, and all medical testimony presented to the court at that time indicated that appellant was competent to stand trial. The trial court agreed and set the trial for January, 1977. At trial appellant indicated to his counsel that he wanted to waive trial by jury. A waiver inquiry was conducted by the trial court in open court, and a written waiver of jury was executed by the appellant.
Appellant asserted the defense of insanity at the time of the offense. Three psychiatrists testified concerning appellant's sanity. Two of them specifically concluded that he was mentally competent at the time of the murder, and one stated that he had no opinion.
At the conclusion of the guilt phase of the trial, the trial court found appellant guilty of first-degree murder of the girl and of aggravated battery of the man who had stopped to help appellant. After a second inquiry, the appellant again waived a jury for the sentencing phase.
The trial judge imposed the death sentence, finding that: (1) the defendant created great risk of death to many persons by committing aggravated assault on the motorist whom he flagged down and by driving at a high rate of speed to a real estate office in Polk County where he abducted a secretary and held her hostage for thirteen to sixteen hours; (2) the capital felony was committed while the defendant was engaged in the commission of the felony of kidnapping in that the victim was forcibly confined against her will, having been found with her ankles tightly bound together with black electrician's tape and her hands bound with her own panties; (3) the capital felony was especially heinous, atrocious, and cruel because before murdering the victim, the defendant had tied her legs together with such force as to leave deep marks; after "cruelly binding up the victim, the defendant proceeded to beat her severely about the head and face with such force as to cause extensive bleeding under the skin" and "then proceeded to cut and stab the victim with a fish knife five times, one stab wound going into the heart and killing her."
*335 The trial court found that the only mitigating circumstance was that the defendant had no significant history of prior criminal activity. The court expressly rejected the assertions made by the defendant that: (1) the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance; (2) the victim was a participant in the defendant's conduct or consented to the act; (3) the defendant acted under extreme duress or under the substantial domination of another person; and (4) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. In rejecting these assertions, the trial court expressly stated that "the psychiatrists, without exception, testified that the defendant was legally sane at the time of the murder, that he understood what he was doing, that he knew the difference between right and wrong, and that he understood the nature and quality of his acts." The trial court concluded: "I don't think there's any question that under the law there are sufficient aggravating circumstances in this case as would warrant imposition of the death penalty, and there are certainly insufficient mitigating circumstances to outweigh those aggravating circumstances."
The appellant raises six points of asserted error in the trial phase of the proceedings and two points of error in the sentencing phase.

Trial Phase
The appellant first contends that the circumstantial evidence is legally insufficient to prove either premeditation or felony murder. We disagree. We find the physical condition of the body including the fact that the victim had been bound, beaten, and had multiple stab wounds, one of which was fatal and others indicating an attempt at protection, together with the conduct and admissions of the appellant were sufficient to establish both premeditation and the underlying felony of kidnapping. In our view, the evidence was clearly sufficient to convict beyond a reasonable doubt.
Secondly, appellant contends that the trial court erroneously found him competent to stand trial, and that he was denied due process of law because such finding was made while the appellant was being administered psychocoptic drugs to control his mental condition. All of the psychiatric testimony confirmed that the appellant was competent to stand trial although it recognized that the appellant had schizophrenia, chronic paranoid type. The psychiatrists also recognized that appellant should be treated with a strong tranquilizing drug to control this mental condition. We reject the assertion by appellant's counsel that appellant was "only chemically competent." The record clearly reflects that the trial court fully complied with procedures established by this Court for the determination of competency as set forth in Rule 3.210, Florida Rules of Criminal Procedure. The expert testimony clearly and unequivocally revealed that appellant had such control of his mental faculties as to enable him to comprehend the charges against him and to rationally aid in the conduct of his defense. There is no evidence to the contrary. There was never any doubt that the appellant had the ability to understand the proceedings and to assist counsel in his defense. The fact that appellant's competency is the result of approved medical treatment and medical science does not invalidate that finding of competency. To hold as suggested by appellant's counsel would mean that an individual with a mental disorder which could be controlled by medical science could not be tried for a criminal offense regardless of his ability to comprehend the nature of the proceedings and to assist counsel in his own defense.
Appellant's third contention is that the trial court's acceptance of the waiver of jury trial was erroneous primarily because the trial court failed to properly consider the nature of appellant's mental illness. The evidence is clear that the request for a nonjury trial was initiated by appellant himself and not by his counsel. Upon the request being made, the trial judge immediately *336 directed appellant's counsel to confer privately with Mines and advise him of his rights concerning such waiver. The trial court thereafter made a full inquiry of the appellant in open court. In addition, a written waiver was executed by the appellant. No objection to this waiver was ever made by trial counsel, and his remarks during final argument clearly reflected an approval of this waiver. Although the initial waiver included the penalty phase, the trial court made further inquiry of the appellant prior to the sentencing phase concerning his waiver of the jury. The appellant stated that he was willing to "let the court act." The court then asked defense counsel if he had missed anything in his inquiry or if the inquiry had been insufficient, and counsel replied that it had not. We find nothing in this record which demonstrates that the trial judge acted improperly. In fact, he did everything possible to make sure that appellant knew the consequences of his waiver of the right to a jury trial.
In his fourth point, appellant contends that we should abandon our modified M'Naghten test and adopt the American Law Institute test for insanity including the "irresistible impulse" doctrine. In In re Standard Jury Instructions in Criminal Cases, 327 So.2d 6 (Fla. 1976), this Court modified the test for insanity to include the disease or defect elements of the ALI test. We expressly declined to adopt the "irresistible impulse" doctrine in Wheeler v. State, 344 So.2d 244, 246 (Fla. 1977), and Witt v. State, 342 So.2d 497, 500 (Fla. 1977). We reaffirm our position on that issue and reject the contention of appellant.
The appellant's fifth point concerns an evidentiary ruling by the trial court which sustained an objection to testimony regarding appellant's competency and mental condition at times other than on the date of the offense or at the time of trial. The witness expressly stated that he had no opinion of appellant's competency as of the date of the offense, and we find no error in the trial court's limiting the expert witness' testimony under the circumstances.
Appellant's sixth point contends that we should consider the competency proceedings in the case involving appellant's taking of a person hostage in the real estate office subsequent to the murder. The court's determination that appellant was incompetent to stand trial was reached ten months after his conviction and sentence in this cause. We reject appellant's contention, particularly in view of the remoteness of time, the apparent effect these proceedings would have on appellant's mental condition, and the extensive competency proceedings in the instant case together with the unanimous accord of the testifying experts in this cause.
In conclusion, the record in this cause was clearly sufficient to sustain a finding of guilt and competency beyond a reasonable doubt, and we find that the conviction should be affirmed.

Sentencing Phase
The appellant contends he was denied due process because the indictment in this cause failed to give him notice of the aggravating circumstances upon which the state would rely, and thus the court had no authority to impose the death sentence. This contention is totally without merit. The statutory procedure for the imposition of the death sentence, upheld by the United States Supreme Court, Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1972), specifically and expressly limits the aggravating circumstances to those set forth in section 921.141(5), Florida Statutes (1975). Under the procedures adopted by this state, a defendant has full opportunity to discover the specific facts applicable to each aggravating circumstance under Florida Rules of Criminal Procedure. We find no due process violation in this procedure.[2]
The appellant next contends that the trial court failed to properly consider the aggravating and mitigating factors set forth in section 921.141(5), (6). Under the circumstances of this case we agree with the appellant. We must vacate the sentence and *337 remand for further consideration because the trial court: (1) used an improper aggravating circumstance in finding that appellant created great risk of death to many persons when he murdered this victim; and (2) failed to consider as mitigating circumstances the evidence that appellant may have suffered from extreme mental and emotional disturbance, and that the capacity of the appellant may have been substantially impaired by this mental condition even though he was properly found to be sane.
In its sentencing order, the trial court found that after murdering the victim, the defendant knowingly created great risk of death to many persons by flagging down a passing motorist and striking him with a machete and by driving at a high rate of speed to a real estate office where he took a woman hostage and threatened her life. We have previously held that this type of conduct does not fall within the aggravating type of conduct intended by the legislature in section 921.141(5)(c), Florida Statutes. In Elledge v. State, 346 So.2d 998, 1004 (Fla. 1977), this Court held: "It is only conduct surrounding the capital felony for which the defendant is being sentenced which properly may be considered in determining whether the defendant `knowingly created a great risk of death to many persons.' Section 921.141(5)(c), Florida Statutes." It is clear from this record that at the time appellant stabbed the victim no one else was around. The victim had been dead for two to six hours prior to the occurrence of this aggravating circumstance. The circumstances of this case are clearly distinguishable from those present in Lucas v. State, 376 So.2d 1149 (Fla. 1979), where this statutory aggravating circumstance was deemed appropriate in a factual situation described as a "raging gun battle."
We find unrefuted medical testimony in this record which reflects that appellant had a mental condition diagnosed as schizophrenia, paranoid type. This condition was severe enough to require the trial judge to initially find the appellant incompetent to stand trial until his mental condition could be brought under control by medication at the state hospital. Under the provisions of section 921.141(6), Florida Statutes (1975), there are two mitigating circumstances relating to a defendant's mental condition which should be considered before the imposition of a death sentence: "(b) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance"; and "(f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." From the record it is clear that the trial court properly concluded that the appellant was sane, and the defense of not guilty by reason of insanity was inappropriate. The finding of sanity, however, does not eliminate consideration of the statutory mitigating factors concerning mental condition. The evidence clearly establishes that appellant had a substantial mental condition at the time of the offense. We have reduced death sentences imposed by a trial court to life imprisonment where the jury had recommended a life sentence on the basis of strong evidence of a mental disturbance including the specific type of mental condition reflected by the medical evidence in this cause. Burch v. State, 343 So.2d 831 (Fla. 1977), and Jones v. State, 332 So.2d 615 (Fla. 1976). The trial court erred in not considering the mitigating circumstances of extreme mental or emotional disturbance under section 921.141(6)(b) and the substantial impairment of the capacity of the defendant to appreciate the criminality of his conduct under section 921.141(6)(f). These circumstances may not be controlling, but they were present in this cause and should have been considered.
Under these circumstances, we vacate the sentence and remand the cause to the trial court to reconsider without jury the appropriate sentence after considering the appropriate aggravating and mitigating circumstances.
In accordance with the views expressed in this opinion, the conviction is affirmed and the cause remanded for resentencing by the *338 trial judge without recommendation by a jury.
It is so ordered.
ADKINS, BOYD, OVERTON and ALDERMAN, JJ., concur.
SUNDBERG, C.J. and ENGLAND, J., concur as to the conviction and dissent as to the remand for resentencing. They would reduce the sentence to life without eligibility for parole until the expiration of twenty-five years.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] Menendez v. State, 368 So.2d 1278, 1282 n. 21 (Fla. 1979).