664 A.2d 1310

COMMONWEALTH of Pennsylvania, Appellee,

v.

Joseph D. MILLER, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 26, 1995.

Decided Aug. 25, 1995.

532

534

Allen C. Welch, Lemoyne, for Joseph D. Miller.

John Cherry, Richard E. Guida, Harrisburg, for Commonwealth.

Robert A. Graci, Harrisburg, for Attorney General's Office.

Before: NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

This is a direct appeal from a sentence of death[1] imposed by the Court of Common Pleas of Dauphin County. Following a jury trial, appellant was convicted of the first degree murder[2] and kidnapping[3] of Selina Franklin, and of the first degree murder[4] of Stephanie McDuffey. The jury found two aggravating circumstances[5] relating to each murder conviction

1. 42 Pa.C.S. § 9711(h)(1).

2. 18 Pa.C.S. § 2502(a).

3. 18 Pa.C.S. § 2901(a).

4. 18 Pa.C.S. § 2502(a).

5. The aggravating circumstances applied by the jury to the sentence for the murder of Selina Franklin were that appellant had committed a killing while in the perpetration of a felony (the kidnapping of Selina Franklin), 42 Pa.C.S. § 9711(d)(6), and that appellant had a significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.C.S. § 9711(d)(9). The aggravating circumstances applied by the jury to the sentence for the murder of Stephanie McDuffey were that appellant had been convicted of another Federal or State offense (the murder of Selina Franklin), committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death could be imposed, 42 Pa.C.S. § 9711(d)(11), and that appellant had a significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.C.S. § 9711(d)(9).

which outweighed the six mitigating circumstances [6] and therefore returned two consecutive death sentences. Post-verdict motions were denied and the trial court imposed two death sentences for each of the first degree murder convictions and an additional 7½ to 15 years imprisonment on the kidnapping conviction, all to run consecutively.

## I. *Sufficiency of the Evidence*

Although appellant does not challenge the sufficiency of the evidence regarding his first degree murder convictions, this Court is required to independently undertake a review of the sufficiency of the evidence in all capital cases. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The standard for reviewing the sufficiency of the evidence is whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to support all the elements of the offenses beyond a reasonable doubt. *Commonwealth v. Carpenter*, 511 Pa. 429, 435, 515 A.2d 531, 533–34 (1986). After a review of the record, we find that the evidence amply supports appellant's convictions.[7]

The evidence giving rise to these convictions was that on August 6, 1992, appellant was arrested in connection with the rape of Clara Johnson, which had occurred the previous day. While in custody and after waiving his *Miranda* rights,[8] appellant confessed to raping and murdering two other victims, Selina Franklin and Stephanie McDuffey, several years earlier. After confessing regarding the other two victims,

6. The mitigating circumstances, found applicable by the jury to both counts of murder, were that appellant had been the victim of child abuse; had been neglected by his family and society; suffered from psychological trauma caused by neglect; had a low mental intelligence; suffered from mental illness; and had alcohol abuse problems, 42 Pa.C.S. § 9711(e)(8).

7. Appellant presented no witnesses or evidence at trial.

8. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

appellant led police to where their bodies were buried.[9] Appellant ultimately pleaded guilty to the 1992 charges of rape, kidnapping, aggravated assault and attempted homicide arising out of his 1992 attack on Clara Johnson. Evidence concerning that attack was admitted at appellant's trial for the kidnapping and murders of victims Franklin and McDuffey in order to establish a common scheme, plan or design.

The evidence regarding Clara Johnson, a six foot tall black woman, was that on August 5, 1992, while she waited for a cab at the Uptown Grill (a bar in Harrisburg), appellant and a friend of his offered her a ride. After the friend was dropped off, Johnson testified that she asked appellant to take her back to the bar because she had only consented to the ride when she believed that the friend would be present. Appellant pretended to agree to take her back to the Uptown Grill, but, after stopping at a mini-market for cigarettes and gasoline, he began driving in a direction away from the Uptown Grill, and in a direction away from Johnson's home. Johnson became nervous and, when she tried to get appellant to stop the car, a struggle ensued. Appellant told Johnson that he had something to do with her and that she "wasn't going anywhere." Appellant proceeded to drive at a high rate of speed to an isolated area near Conrail train tracks and, when Johnson tried to jump from the moving vehicle, appellant slammed on the brakes, causing the car door to hit her in the head, dazing her. Appellant then attempted to run over Johnson with the car, but she fell down an embankment. Upon finding her approximately a half mile away from the car, appellant beat her in the head and face and raped her. After consuming a beer, he bound her with duct tape, and placed a knife to her throat. Appellant then informed Johnson that he was going to rape her again, after which he would have to kill her. He also told Johnson that all women were alike and that he had killed other women.

After raping Johnson again, appellant then repeatedly beat her about the head with beer bottles, and dragged her approximately half a mile by her legs to a ditch near where the car

9. Appellant was not charged with rape of these two victims.

was parked, where he put duct tape over her mouth and nose. By happenstance, a Conrail security officer came upon the scene as appellant was dragging Johnson to the ditch. Upon seeing the Conrail officer, appellant fled on foot, leaving behind his car with a bloody knife stuck in the window well. Clara Johnson fortunately survived her ordeal and testified against appellant.

A registration check of the car left at the scene revealed that it belonged to appellant. Based on this information and on Johnson's statement, police went to appellant's home at 6:00 a.m. the next morning, August 6, 1992, to arrest him. Appellant fled to the roof of a multi-story apartment building, where he was apprehended after a six-hour standoff during which he had threatened to jump. Appellant was arrested and charged with the rape, aggravated assault, kidnapping and attempted murder of Clara Johnson. After being read and waiving his *Miranda* rights, appellant told Detective Thomas Brennan that Johnson had voluntarily accompanied him to the Conrail yard to have sex, and that a fight had ensued after an argument. At the end of the interview, Detective Brennan told appellant that he believed appellant had probably been involved in other assaults and that appellant could get in touch with him if he wished to provide further information or take him to any other bodies.

Five days later, on August 11, 1992, while in custody, appellant requested a meeting with Detective Brennan through a counselor at the Dauphin County Mental Health/Mental Retardation Program. Pursuant to appellant's request, Detective Brennan and appellant met at the prison between 4:00 and 5:00 p.m. After again waiving his *Miranda* rights, appellant further stated to Detective Brennan that he had killed a woman named Selina Franklin in 1987, and told Detective Brennan that he would take him to the body. Appellant also asked at the meeting to speak to a representative of the District Attorney's Office. Complying with appellant's request, Detective Brennan transported appellant to the District Attorney's Office at about 5:00 or 6:00 p.m. to meet with First Assistant District Attorney William Tully. En

route to the District Attorney's Office, appellant told the detective that he had killed yet another woman in 1989, but that he did not recall her name.

At the District Attorney's Office, appellant told Mr. Tully, in Detective Brennan's presence, that he had committed several homicides and wanted the death penalty because he did not wish to further embarrass his family. Appellant further told Mr. Tully that the bodies were located at the Swatara Township landfill. While awaiting the assistance of other police departments to join in the search of the landfill, appellant gave Detective Brennan more details of the murders.

Specifically, appellant said in his statement that he had picked up Selina Franklin and her friends,[10] and, after dropping off the other women at their homes, he took Franklin to the landfill where Franklin agreed to have sex with him for thirty-five dollars. He told Detective Brennan that after having sex with Franklin, he found an electrical insulator with which he beat Franklin over the head until she was dead.[11] He then retrieved the thirty-five dollars from her pocket. Appellant said that several days after being questioned by police in connection with Franklin's disappearance, he had returned to the landfill, located the body and moved it to a different location, removed some of the victim's clothing and scattered it around the landfill and buried the body along with the insulator. When he returned again several months later, he found bones sticking out of the ground, which he threw down a hill.

Appellant also told Detective Brennan about the killing of the other woman, whose name he did not know but who was later identified through testimony as Stephanie McDuffey. Appellant told the detective that sometime in 1989, he had picked up this second victim on the streets of Harrisburg and

10. The friends were Charlene Jackson, Melva Humphries and Wendy Harris. Jackson and Humphries testified at trial that after dropping Harris at her house, appellant made several stops, including a stop at a mini-market for cigarettes, and that they had not seen Franklin after that night.

11. An electrical insulator is a heavy metal pipe with a large glass or ceramic head.

taken her to the same landfill where he had taken Franklin and that he and the second victim had sexual intercourse. He then took a piece of pipe from a junked car with which he beat her over the head until she was dead. Appellant told Detective Brennan that he then dragged her a short distance off the access road through the landfill and covered her body, along with the pipe, with lumber, shingles and tires.

Appellant also recounted the assault on Johnson which led to his arrest. Although appellant claimed that Johnson had accompanied him to the Conrail yard voluntarily and that they had had consensual sex, he also told Detective Brennan that sometimes he just got "the urge to go out, pick up a black female, rape her and kill her." (N.T. 159).

After his detailed statement to the first deputy D.A. and Detective Brennan, appellant was taken to the Swatara Township landfill between 6:00 and 7:00 that evening, where he pointed out the general location of the two bodies to police. Because police were not equipped to conduct a search at night, appellant agreed to return to the landfill the next morning to aid in the search for the bodies. On August 12, 1992, Detectives Brennan and Wenner secured appellant from the prison, advised him once again of his *Miranda* rights, which he waived, and took him to the landfill. During the drive, appellant marked two areas on an aerial photograph provided by the detectives as the general areas where the bodies were located. These corresponded to the areas he had indicated the previous night. En route to the landfill, appellant began to laugh for no apparent reason and told Detective Brennan that he previously had been lying about the murders.

Notwithstanding Miller's recantation, police searched the areas indicated by appellant and, over the course of a week, found relatively intact human and fetal skeletal remains later identified as those of Stephanie McDuffey and her eight-and-a-half month old fetus.[12] Her skull had been crushed, and the

12. Stephanie McDuffey, a black woman who was eight and a half months pregnant at the time of her disappearance, was last seen alive on November 6, 1989 at 3:00 p.m. She had been reported missing after she failed to appear for an obstetrics appointment on that date and

pathologist testified that the cause of death was several severe blows to the head. The position of the body indicated that it had been dragged to the location where it was discovered. The skeletal remains were identified by dental records and specific conditions of the pregnancy, as documented by hospital records. A pipe was also found alongside the body.

Police also uncovered the partial skeletal remains of Selina Franklin, including a foreleg bone around which a rope was knotted and tied. The pathologist testified that, based upon the tightness of the rope around the bone, prior to decay the rope would have been tightly tied around the victim's ankle. The skull was never recovered, so the body was identified by the clothing, which matched the clothing Selina Franklin wore when she was last seen by friends.[13] An electrical insulator was found near the body.

This evidence, including appellant's own admission to the slayings and his knowledge of where the bodies were located, when viewed in the light most favorable to the Commonwealth as the verdict winner, is clearly sufficient to support appellant's convictions for the first degree murders of Selina Franklin and Stephanie McDuffey.

Appellant alleges that the evidence is insufficient to support his conviction for the kidnapping of Selina Franklin. As discussed supra, this court must examine the evidence in the light most favorable to the Commonwealth. *Carpenter, supra* at 435, 515 A.2d at 533–34.

was not home when her mother returned from work at 11:00 p.m. The police had no clues to her disappearance prior to appellant's statements admitting to her murder and disposal of her body.

13. Franklin's friends first noticed her missing on May 16, 1987, the day after she had gotten a ride with appellant. Franklin's mother reported her missing two days later and police learned from her friends that Franklin had last been seen alive in appellant's car. When questioned by police concerning Franklin's disappearance when she was first reported missing, appellant said he had dropped her off at the corner of Third and Reily Streets in Harrisburg and had not seen her again. Appellant consented to a search of his car at that time, during which police found a necklace which Franklin's boyfriend identified as belonging to Franklin. However, appellant said it was his wife's. Appellant's wife did not testify at trial. No charges were brought against appellant at that time.

Kidnapping is established when the Commonwealth demonstrates that a defendant:

> unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:
>
> \* \* \* \* \* \*
>
> (3) To inflict bodily injury on or to terrorize the victim or another....

18 Pa.C.S. § 2901(a). These elements can be proven circumstantially. *Commonwealth v. Chester,* 526 Pa. 578, 608–09, 587 A.2d 1367, 1382, *cert. denied,* 502 U.S. 959, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991).

Here, Selina Franklin was last seen alive in appellant's company and her body was found in a remote area some distance from where she was last seen. Additionally, there was also evidence that Franklin had a rope tied around her leg, which further circumstantially indicates that she was confined against her will in a place of isolation.[14] This circumstantial evidence is sufficient to establish kidnapping. *Chester, Id.* (kidnapping conviction circumstantially proven where evidence demonstrated that victim was last seen leaving a bar with defendants, to whom he had offered a ride, and that his body was found in a wooded area some distance away); *Commonwealth v. Williams,* 252 Pa.Super. 435, 381 A.2d 1285 (1977) (circumstantial evidence sufficient to support kidnapping conviction where defendant was found driving victim's car in possession of several of victim's belongings without consistent or satisfactory explanation and search of car revealed gun and tape of same type as was used to bind victim). *See,*

---

**14.** Furthermore, the testimony regarding appellant's kidnapping of Clara Johnson established appellant's pattern of taking women who voluntarily got into his car in Harrisburg to remote unlit areas against their will and binding them in some fashion in order to rape and murder them. As discussed *infra,* appellant's pattern of behavior constituted a common scheme, which was additional circumstantial evidence in support of appellant's conviction for kidnapping. *Commonwealth v. Buehl,* 510 Pa. 363, 387, 508 A.2d 1167, 1179 (1986), *cert. denied,* 488 U.S. 871, 109 S.Ct. 187, 102 L.Ed.2d 156 (1988) (evidence of prior crimes crucial circumstantial evidence in establishing murder).

*People v. Mattson,* 50 Cal.3d 826, 268 Cal.Rptr. 802, 789 P.2d 983 (1990), *cert. denied,* 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 595 (1990) (circumstantial evidence sufficient to establish kidnapping where victim was last seen leaving for work, her body was found in a remote area several miles from either her home or her place of work, and the victim's clothing and a map of the area where the body was found were found in defendant's car); *Mines v. State,* 390 So.2d 332 (Fla.1980), *cert. denied,* 451 U.S. 916, 101 S.Ct. 1994, 68 L.Ed.2d 308 (1981) (circumstantial evidence sufficient to sustain conviction for kidnapping where victim's body was bound when found); *Bromley v. State,* 259 Ga. 377, 380 S.E.2d 694 (1989) (circumstantial evidence sufficient to establish kidnapping where victim was last seen alive with defendant and there was duct tape on victim which matched duct tape found in defendant's trailer).

Having determined that the record supports the murder and kidnapping convictions, we now turn to appellant's allegations of error.

## II. *Admission of Evidence Regarding Other Crimes*

■ Appellant alleges that the trial court erred by admitting evidence of appellant's rape and attempted murder of Clara Johnson. Although evidence of other crimes committed by a defendant is generally not admissible at trial, such evidence is relevant and admissible for the purpose of establishing a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one naturally tends to prove the others. *Commonwealth v. Billa,* 521 Pa. 168, 177, 555 A.2d 835, 840 (1989). In order for other crimes evidence to be admissible under this exception, a comparison of the crimes must establish a logical connection between them. *Commonwealth v. Hughes,* 521 Pa. 423, 459, 555 A.2d 1264, 1283 (1989). The existence of a common scheme is relevant to establish any element of a crime (e.g. the identity or intent of the perpetrator), so long as it does not merely indicate the defendant's propensity to commit similar crimes.

548

Here, the trial court expressly allowed testimony by Johnson and others regarding the Johnson incident for the limited purpose of establishing a common scheme, plan or design. The common scheme was relevant to establish that appellant was the person who had committed the murders of Franklin and McDuffey and to establish that appellant possessed the requisite mental state to commit first degree murder. Thus, the issue is whether there was a logical connection between the crimes that would allow admission of this evidence to prove the identity of the perpetrator and the appellant's *mens rea* of the murder. In the three incidents at issue here, all three victims were tall, heavy-set black women who, for one reason or another, initially consented to get into appellant's car voluntarily. Each was then taken against their will at night from Harrisburg to remote, unlit areas used as dumping grounds. Appellant contended that all three women consented to have sex with him, even though Johnson denied consenting to sexual intercourse. All three women were severely beaten in the head and face with blunt objects, and at least two of the women, Johnson and Franklin, were bound. These facts, when taken together, establish that appellant had a common design in luring similar type victims into his vehicle, taking them to remote areas for sexual purposes against their will and brutally beating them in a similar manner, attempting to cause or causing their deaths. *Commonwealth v. May,* 540 Pa. 235, 247, 656 A.2d 1335, 1341 (1995) (subsequent assaults properly admitted to establish common scheme at trial for prior murder where victims were physically similar, body of murder victim was found in close proximity to where defendant left assault victims and attacks were of similar nature); *Commonwealth v. Clayton,* 506 Pa. 24, 33, 483 A.2d 1345, 1349–50 (1984), *cert. denied,* 485 U.S. 929, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988) (attempted murder properly admitted at trial for prior murder to establish common scheme where crimes were strikingly similar in geographic location, motive and method of execution of crime).

 Appellant argues that the lapse of time between each incident negates the theory that all three incidents were

549

part of a common scheme, plan or design. While remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under this theory, the importance of the time period is inversely proportional to the similarity of the crimes in question. *Commonwealth v. Shively*, 492 Pa. 411, 416, 424 A.2d 1257, 1259 (1981). Given the striking similarity of the three incidents, the fact that the three attacks occurred over a five year period is not remote enough to render the evidence of the attack on Johnson inadmissible. *Commonwealth v. Donahue*, 519 Pa. 532, 544, 549 A.2d 121, 127 (1988) (evidence of death of child in defendant's care three years earlier admissible in trial for murder of child to refute defense of accident). *See People v. Archerd*, 3 Cal.3d 615, 91 Cal.Rptr. 397, 477 P.2d 421 (1970) (evidence of murders committed in 1947, 1958 and 1960 admissible to show intent in prosecution for murders committed in 1956, 1961 and 1966 where all murders were committed by insulin injection); *Benefiel v. State*, 578 N.E.2d 338 (Ind.1991), *cert. denied*, 504 U.S. 987, 112 S.Ct. 2971, 119 L.Ed.2d 591 (1992) (similar sexual assaults committed six and eight years earlier admissible to show common scheme); *State v. Coen*, 382 N.W.2d 703 (Iowa Ct.App.1985) (evidence of similar sexual assaults five years earlier admissible to show intent to commit sexual assault as an element of the crime).

Appellant further contends that because he did not deny killing the two women, but only challenged the degree of murder, the evidence of the rape of Johnson had no probative value and served only to inflame the jurors and prejudice them against him. This argument ignores the fact that appellant's guilt of the crimes was far from admitted at trial. Contrary to appellant's repeated assertions that he did not deny killing the two women, the record reveals a different story. Appellant pleaded not guilty and he challenged the voluntariness before and throughout his trial of all of his statements in which he admitted to committing the crimes. Thus, his assertion now that he "did not deny" killing the women falls short of actually admitting to the crimes, which could arguably vitiate the need for the evidence in question.

Hence, this evidence was properly admitted to establish the identity of the killer. *Buehl, supra,* at 510 Pa. 363, 508 A.2d 1167 (evidence regarding two prior robberies admissible at trial for triple murder in order to demonstrate common scheme where appellant had told the prior victims that he would shoot them in the leg and work his way up, one of the murder victims had indeed been shot in the leg, abdomen and face, and two prior victims testified that appellant told them he would shoot out their eye if they tried to identify him and one of the victims had been shot in the eye).

Furthermore, the evidence of the abduction, rape and attempted murder of Johnson was also admissible to establish that the killing was intentional and that appellant acted with malice in killing his victims. Because the prosecution only had circumstantial evidence aside from the skeletal remains and appellant's confession, the evidence regarding Johnson was necessary to demonstrate that appellant had the same common design in mind regarding Franklin and McDuffey, so as to prove first degree murder—that is, to kidnap them and take them to a remote, dark area, rape them and beat them to death. *Commonwealth v. Boykin,* 450 Pa. 25, 31, 298 A.2d 258, 262 (1972) (evidence that defendant had suffocated two other babies in her custody admissible in trial for death of third baby to establish intent through common scheme).

Furthermore, appellant's rape of Johnson was not stressed by the prosecution and precautions were taken by the trial court during both the guilt phase and the penalty phase of trial to limit the prejudicial impact of this evidence. The trial court gave limiting instructions both prior to Johnson's testimony and in the jury charge that the evidence was only to be considered by the jury for the limited purpose of establishing common scheme, plan or design.[15] The prosecution properly restricted its references to the Johnson incident to the issue of common scheme and only mentioned the incident involving Johnson five times in a fourteen page closing argu-

15. The jury is presumed to follow the court's instructions. *Commonwealth v. Tilley,* 528 Pa. 125, 142, 595 A.2d 575, 583 (1991).

ment, again properly limiting those references to comparison between the crimes to demonstrate a common scheme. Additionally, in order to prevent prejudice to appellant, the trial court ruled that the evidence was inadmissible in the sentencing phase.[16]

Under these circumstances, this Court finds that the testimony was properly admitted to demonstrate a common scheme to establish identity and malice. Furthermore, the court's limiting instructions properly informed the jury of the limited purpose for which the evidence was admitted.

### III. *Admission of Victim's Pregnancy*

Appellant next argues that the trial court erred in allowing testimony during the trial that Stephanie McDuffey was eight and a half months pregnant at the time of her murder, asserting that its probative value was outweighed by its prejudice.[17] A trial court has broad discretion to determine whether evidence is admissible. *Commonwealth v. Cargo*, 498 Pa. 5, 15, 444 A.2d 639, 644 (1982). If the probative value of the evidence outweighs its prejudicial impact, the decision of the trial court will not be reversed. *Id.*

Here, the evidence of McDuffey's pregnancy was relevant for two purposes. First, the pregnancy gave rise to a physical characteristic which was relevant to establish the existence of a common scheme, plan or design which included selecting tall, heavy black women as victims. *Hughes, supra,* at 521 Pa. 423, 555 A.2d 1264 (physical similarity between victims relevant in determining whether prior crime is admissible). This purpose was served by the testimony of Mrs. McDuffey that her daughter was tall and had always been a little heavy, and that as a result of the pregnancy she was very large.

16. The Commonwealth presented no evidence at the sentencing hearing, but merely incorporated the trial testimony and read an extract of appellant's record of convictions in order to establish the aggravating circumstances.

17. Because no objection was made, counsel essentially waived appeal of this evidence. However, since this Court employs a relaxed waiver standard in capital cases, the merits of this waived claim are addressed herein. *Zettlemoyer, supra* 454 A.2d at 942.

Second, evidence regarding the victim's pregnancy was necessary since police used the presence of fetal remains in the pelvic area of the skeleton to identify the victim as McDuffey. This purpose was achieved by the testimony of McDuffey's obstetrician that she was eight and a half months pregnant, and the testimony of the medical examiner that the skeleton found in the Swatara landfill contained the remains of a fetus and that he had been able to identify the victim because of medical characteristics which corresponded to the files concerning McDuffey's pregnancy.

Appellant argues that the evidence is not relevant to establish a common scheme because he does not deny killing McDuffey and because the defense stipulated to the identity of the victim. Therefore, he argues that this prejudicial evidence to establish identity was improperly admitted. However, the Commonwealth never agreed to the stipulation as to the identity of McDuffey, nor was it required to do so. *Commonwealth v. Travaglia*, 541 Pa. 108, 128, 661 A.2d 352, 362 (1995); *Commonwealth v. Evans*, 465 Pa. 12, 17, 348 A.2d 92, 94–93 (1975) (Commonwealth is permitted to prove defendant's guilt by whatever evidence it can muster). In the absence of a stipulation by both parties, the evidence was clearly relevant for the purpose of identifying the victim. Furthermore, even if appellant admitted to committing the murder of McDuffey, the Commonwealth still needed to establish the identity of the victim since appellant did not know the identity of his second victim.

This testimony was limited to the reasons for which it was relevant. Moreover, the Commonwealth did not dwell on the victim's pregnancy, and the trial court instructed the jury to exclude the testimony regarding the pregnancy during the penalty phase. Therefore, because the probative value of the evidence outweighed the prejudicial impact, it was properly admitted.

### IV. *Court's Refusal to Grant a Motion for a Bench Trial*

Next, appellant argues that the trial court abused its discretion in refusing to grant his request for a bench trial.

Whether or not to grant a defendant's request for a bench trial is within the sound discretion of the trial court. *Commonwealth v. Sorrell,* 500 Pa. 355, 362, 456 A.2d 1326, 1328–29 (1982). Accordingly, appellant has no absolute right to a bench trial. *See, Singer v. United States,* 380 U.S. 24, 34, 85 S.Ct. 783, 789–90, 13 L.Ed.2d 630 (1965) (no right to a bench trial under United States Constitution).

 In the present case, the trial court denied appellant's request for a non-jury trial because the court felt that as a result of its exposure to large amounts of excludable evidence in pretrial proceedings, it could not be an impartial fact-finder. *Sorrell, supra* (court should consider prior exposure to inadmissible evidence; court properly exercised discretion in denying motion for bench trial where court had determined that its partiality was potentially tainted by exposure to defendant's record in pretrial proceedings). Given this exposure, it was a proper exercise of the court's discretion to deny the request for a bench trial.

### V. *Court's Denial of Recusal Motion*

 Paradoxically, after arguing in this appeal that the trial court committed reversible error by not allowing him to proceed with a bench trial before it, appellant next argues that the trial judge erroneously failed to recuse herself after having stated on the record that she could not be an impartial fact-finder because of information learned in pre-trial proceedings. Appellant first made a motion for recusal after the trial court denied appellant's request for a bench trial. A recusal is required only where the party requesting recusal establishes that there is a substantial doubt as to the jurist's ability to preside impartially. *Commonwealth v. Boyle,* 498 Pa. 486, 490, 447 A.2d 250, 252 (1982). The mere fact that the trial judge participated in earlier pretrial stages in the proceedings is not alone sufficient grounds for recusal. *Id.* Rather, appellant must demonstrate that the judge could not rule impartially. A court's decision to deny a recusal motion, however, will not be disturbed absent an abuse of discretion.

*Commonwealth v. Council,* 491 Pa. 434, 438, 421 A.2d 623, 625 (1980).

Here, the court ruled upon several pre-trial motions and after it denied appellant's motion for a bench trial, appellant moved for the court's recusal. The trial court denied the recusal motion because, although she did not believe she could be an impartial fact-finder, she did believe she would be able to be impartial in ruling on matters of law.

■■■ Appellant contends, however, that the trial court could not be impartial and that this is demonstrated by her subsequent rulings at trial. Specifically, appellant contends that the fact that the trial court allowed the Commonwealth to present the testimony of Clara Johnson clearly establishes that the trial judge was unfairly biased against appellant as a result of the pretrial proceedings. However, as discussed *supra,* the trial court's admission of that testimony was a proper evidentiary ruling well grounded in the law. A mere adverse ruling, without more, does not demonstrate the bias required for a recusal to be granted. Moreover, an examination of the entire record reveals that the trial court did not consistently rule for the Commonwealth but instead made numerous legal rulings in appellant's favor, including the exclusion of the testimony of Clara Johnson during appellant's penalty phase and the exclusion of all evidence of several other similar crimes with which appellant was charged at both trial and sentencing.[18] *Boyle, supra* at 491–92, 447 at 253 (denial of motion for recusal will not be disturbed where record reflects proper exercises of discretion with no suggestions of bias or unfairness to defendant.) It was not an abuse of discretion for the trial court to deny appellant's motion for recusal. This claim must therefore fail.

18. For example, the trial court excluded evidence that at the time of his trial, appellant had confessed to and was charged with: (1) the 1992 rape and attempted murder of Penny Woodward, a black female resident of Harrisburg, at an illegal dumping ground in Perry County; and (2) the 1990 murder of Phoenix Bell, a dark skinned Native American Harrisburg resident, also at an illegal dumping area in Perry County. The trial court also denied the Commonwealth's request to introduce photographs of both crime scenes for the purpose of establishing a common scheme because of their prejudicial impact.

## VI. *Suppression of Statements*

Next, appellant alleges that the trial court erroneously denied his motion to suppress the statements appellant made while in custody because they were involuntarily and unknowingly given to police. Because appellant failed to raise this issue in post-trial motions, it is waived. Pa.R.A.P. 302(a), *Commonwealth v. Metz*, 534 Pa. 341, 345, 633 A.2d 125, 127 (1993) (issues raised in pre-trial motions but not in post-trial motions are not preserved for appeal). However, since this Court has developed a relaxed standard regarding waiver rules in capital cases, we will address the underlying claim. *Zettlemoyer, supra* at 26, 454 A.2d at 942.

Appellant's contention that his statements were not voluntarily and knowingly given is belied by the record, which demonstrates that appellant's statements were clearly voluntarily and knowingly made. In reviewing a ruling on a suppression motion, the standard of review is whether the factual findings and legal conclusions drawn therefrom are supported by the evidence. *Commonwealth v. Bond*, 539 Pa. 299, 305–07, 652 A.2d 308, 311 (1995).

At the outset, appellant focuses in his brief primarily on the statements made on September 28, 1992. However, the information obtained at the September 28 interview related to other crimes[19] and was not introduced at the trial in the matter now before us. Furthermore, appellant himself initiated the conversations on September 28, 1992, and was advised of his *Miranda* warnings and waived them on that date. Therefore, his claim as it relates to these statements is baseless.

With regards to the statements which were introduced at trial, the evidence presented at the suppression hearing reveals that all of the statements appellant challenges were made after appellant voluntarily and knowingly waived his *Miranda* rights. Appellant was advised of and waived his

19. On September 28, 1992, appellant confessed to the 1992 rape and attempted murder of Penny Woodward and the 1990 rape and murder of Phoenix Bell.

*Miranda* rights prior to making a statement on August 6, 1992, concerning his assault on Clara Johnson. As to the statements made on August 11, 1992, concerning the two incidents at issue here, a caseworker testified that appellant initiated the request that he contact Detective Brennan on that date and that appellant signed a written consent form to enable the caseworker to contact the police. Detective Brennan testified that appellant was again advised of and waived his *Miranda* rights prior to the interview conducted at appellant's request on August 11, and that appellant himself requested the further meeting with the District Attorney in which he confessed to the murders of Selina Franklin and Stephanie McDuffey. Prior to making statements on August 12, 1992, appellant was again reminded of his *Miranda* rights and stated that he was aware that he could invoke them. *Commonwealth v. Youngblood,* 453 Pa. 225, 234, 307 A.2d 922, 927 (1973) (renewed willingness of defendant to speak to police, indicated by interview initiated by defendant, and renewed *Miranda* warnings constitutes a voluntary waiver). All that is necessary for a valid waiver is that appellant's rights be reasonably conveyed to him. *Duckworth v. Eagan,* 492 U.S. 195, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989). Therefore, the evidence established that appellant voluntarily waived his *Miranda* rights.

 Furthermore, prior . experience with *Miranda* warnings suggests waiver is knowing and voluntary. *Hughes, supra* at 444, 555 A.2d at 1274–5. Appellant had a long history of arrests during which he frequently exercised his *Miranda* rights.[20] Testimony was also presented at the suppression hearing that appellant had waived his rights on at least three earlier occasions, in relation to the investigation of a 1990 arson, a 1984 burglary and the initial investigation into the disappearance of Selina Franklin in 1987. Therefore, the

**20.** Appellant was first arrested at the age of ten for arson and had a total of five juvenile arrests, all of which resulted in convictions. Appellant also has twelve prior adult arrests, resulting in ten convictions for charges including arson, aggravated assault, indecent assault, escape and various property offenses.

waivers were voluntary and the trial court properly admitted the statements.[21]

## VII. *Diminished Capacity Defense*

Appellant's next allegation is that the trial counsel was ineffective for failing to present a diminished capacity defense.[22] When asserting ineffective assistance of counsel, appellant must demonstrate that: (1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have any reasonable basis designed to effectuate his client's interests; and (3) counsel's ineffectiveness prejudiced appellant. *Commonwealth v. Edmiston*, 535 Pa. 210, 237, 634 A.2d 1078, 1092 (1993), *citing, Commonwealth v. Pierce*, 515 Pa. 153, 158, 527 A.2d 973, 975 (1987). Counsel is presumed to have acted in his clients's best interest; thus, it is appellant's burden to prove otherwise. *Commonwealth v. Hancharik*, 534 Pa. 435, 633 A.2d 1074 (1993); *Commonwealth v. Miller*, 494 Pa. 229, 233, 431 A.2d 233, 235 (1981).

Appellant argues that the evidence presented at sentencing that he suffered from a character disorder and pathological intoxication should have been presented at trial because such evidence would have established that his disorders and patho-

21. Appellant also contends that he lacked the mental capacity to voluntarily waive his rights as a result of his low IQ and poor psychological state. However, appellant does not substantiate this claim. This Court has repeatedly held that a totality of the circumstances analysis must be applied to determine if a confession was voluntary. A low I.Q. or mental instability does not *per se* invalidate a confession. *Hughes, supra* at 444, 555 A.2d at 1274-5; *Commonwealth v. Whitney*, 511 Pa. 232, 240-41, 512 A.2d 1152, 1156-57 (1986). Appellant presented no witnesses at the suppression hearing to support his assertion that his waiver was involuntary. In fact, appellant fails to point to a single factor which would indicate that his will was overborne.

22. A claim of ineffective assistance of counsel must be raised at the first point in the proceedings at which the allegedly ineffective counsel no longer represents the appellant. *Commonwealth v. Hubbard*, 472 Pa. 259, 276, 372 A.2d 687, 695 (1977). Because present counsel was appointed prior to the conclusion of post-trial motions, trial counsel's ineffectiveness should have been raised at that point. Because it was not, the issue is waived. *Commonwealth v. Carter*, 463 Pa. 310, 313, 344 A.2d 846, 848 (1975). However, we will address this issue under the relaxed waiver standard applicable in capital cases. *Zettlemoyer, supra* at 26, 454 A.2d at 942.

logical intoxication caused him to act impulsively, and therefore without the specific intent to kill. The record reveals that both of appellant's medical experts (Dr. Stanley Schneider and Dr. Robert Davis) testified during the penalty phase that appellant was borderline retarded and suffered from numerous psychological problems including Organic Brain Syndrome and Attention Deficit Hyperactive Disorder, as well as alcohol and drug addiction to the point of pathological intoxication, and that these conditions caused appellant to act impulsively. (N.T. 3/25/93 at 67–83; 137–39). Dr. Davis also concluded that appellant knew the difference between right and wrong and understood the nature of the crimes committed and the consequences of his actions. He further testified that he did not have any basis upon which to conclude that appellant lacked the ability to form the specific intent to kill. (N.T. 3/25/93 at 151–57).[23] Because neither doctor testified that appellant's disorders prevented him from forming the specific intent to kill, appellant has not met his burden of proving that such evidence existed so as to demonstrate his ineffective assistance claim.

The medical testimony that was presented regarding appellant's psychological disorder was simply that he had a difficult time controlling his impulses due to his pathological alcoholism and borderline retardation. This Court has repeatedly held that testimony regarding irresistible impulse is not relevant to a diminished capacity defense because it does not negate the specific intent to kill. *Travaglia, supra,* at 122–123, 661 A.2d at 359–60 (evidence that appellant lacked ability to control his actions or that he acted impulsively does not establish diminished capacity); *Zettlemoyer, supra* at 28–29, 454 A.2d at 943 (testimony regarding appellant's irresistible impulses caused by a personality disorder inadmissible on the issue of appellant's specific intent to kill); *Commonwealth v. Weinstein,* 499 Pa. 106, 113, 451 A.2d 1344, 1347 (1982) (irresistible impulse rejected as relevant in determining whether appellant possessed specific intent to kill). Because the testimony which

**23.** Dr. Schneider was not questioned regarding appellant's ability to understand his actions or form the specific intent to kill.

appellant's experts presented during the penalty phase of trial would not have been admissible in the guilt phase on the issue of specific intent, trial counsel was not ineffective for failing to present this meritless defense.

## VIII. *Voluntary Intoxication Defense*

 Appellant also contends that trial counsel was ineffective for failing to present a voluntary intoxication defense. In order to support a defense of voluntary intoxication, the evidence must establish that, at the time of the murders, the defendant was overwhelmed by the effects of alcohol to the point of losing his faculties and sensibilities, resulting in his inability to form the specific intent to kill. *Commonwealth v. Breakiron*, 524 Pa. 282, 295, 571 A.2d 1035, 1041, *cert. denied,* 498 U.S. 881, 111 S.Ct. 224, 112 L.Ed.2d 179 (1990). Appellant did not allege that he was too intoxicated to understand what he was doing when he committed the murders, or even that he was drunk. The only testimony regarding intoxication was from appellant, who testified at sentencing that he was drinking on the nights of the murders. He did not testify that he was intoxicated at the time of the murders. Furthermore, the testimony of Clara Johnson, Charlene Jackson and Melva Humphries at trial that appellant was driving a car in a normal fashion for an extended period of time prior to the assaults in at least two of the incidents belies this defense. *Id.* (defendant's ability to drive immediately following crime substantially negates defense of diminished capacity due to intoxication). Because the evidence failed to demonstrate a voluntary intoxication defense, counsel was not ineffective for failing to present it at trial.

## IX. *Prosecutorial Misconduct*

 Next, appellant alleges that the prosecutor engaged in misconduct in his closing argument during the sentencing phase of the trial by informing the jury that it could consider in its decision the deterrent effect of the sentence and society's right to retribution. Appellant also alleges that counsel was ineffective for withdrawing his objection to the comments

in this regard, for failing to request a cautionary instruction or mistrial after the comments were made and for not raising the issue of prosecutorial misconduct in post-trial motions.

This Court has long held that prosecutors are permitted to argue for deterrence and retribution during the sentencing phase. *Zettlemoyer, supra* at 54–55, 454 A.2d at 957–58 (not prosecutorial misconduct to tell jury that they "have to consider what, if any, deterrent effect your decision should have"); *Whitney, supra* at 243–44, 512 A.2d at 1158–59 (plea for vengeance not improper), citing *Commonwealth v. Travaglia,* 502 Pa. 474, 502, 467 A.2d 288, 302 (1983), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984) (not prosecutorial misconduct to ask the jury to "settle the score"). Because the prosecutor's comments were not improper, counsel was not ineffective for failing to object or request a cautionary instruction or mistrial. This issue is meritless.

## X. *Aggravating Circumstances*

▪ Appellant next argues that there was insufficient evidence to support any of the aggravating circumstances found by the jury in the sentencing phase. The jury found two aggravating circumstances in support of the imposition of the death penalty for the murder of Selina Franklin and two in support of the sentence for the murder of Stephanie McDuffey. This issue was also not raised in post-trial motions and would normally be waived. Pa.R.A.P. 302(a). However, it is our statutory duty to determine whether the sentence of death is supported by at least one aggravating circumstance. 42 Pa.C.S. § 9711(h)(3)(ii). Based upon our review of the record, we find that the evidence amply supported the finding of all of the aggravating circumstances.

With respect to the death of Selina Franklin, the jury found as the first aggravating circumstance that the murder had been committed in the perpetration of a felony, kidnapping. 42 Pa.C.S. § 9711(d)(6). As discussed above, there was substantial direct and circumstantial evidence that Selina Franklin was murdered in the course of her kidnapping. With respect to the second aggravating circumstance, the jury

found that appellant had a significant history of felony convictions involving the use or threat of violence to the person. 42 Pa.C.S. § 9711(d)(9). This finding was based upon sufficient evidence consisting of appellant's criminal record, which revealed that he had been convicted of attempted rape in 1979; aggravated assault in 1981; burglary in 1984; arson endangering a person in 1990; and the attempted homicide, rape, kidnapping and aggravated assault of Clara Johnson in 1992. This claim clearly fails.

With respect to the jury's finding of two aggravating circumstances in support of the imposition of the death penalty for the murder of Stephanie McDuffey, the jury properly found that at the time of sentencing, appellant had been previously convicted of an offense for which a sentence of life imprisonment or death could be imposed, that is, the murder of Selina Franklin. 42 Pa.C.S. § 9711(d)(11). As discussed supra, there was sufficient evidence to support his conviction for the first degree murder of Selina Franklin. Second, the jury found that appellant had a significant history of convictions for crimes involving the use or threat of force. 42 Pa.C.S. § 9711(d)(9). As discussed above, he had a substantial and violent criminal history upon which the jury could adequately make this finding. Therefore, there was sufficient evidence to support all of the aggravating circumstances found by the jury.

## XI. *Legality of Sentence*

Appellant's final two arguments relate to the sentence itself. First, appellant alleges that the imposition of two consecutive death sentences followed by a term of imprisonment is illegal because of the physical impossibility of serving the sentences as imposed. Appellant ignores this Court's prior holdings in which it has repeatedly upheld the imposition of consecutive death sentences and a consecutive term of imprisonment. *See, e.g., Hughes, supra,* at 521 Pa. 423, 555 A.2d 1264 (two consecutive death sentences followed by consecutive term of 10–20 years imprisonment); *Commonwealth v. Stokes,* 532 Pa. 242, 615 A.2d 704 (1992) (three consecutive

death sentences followed by consecutive term of 17½–35 years imprisonment). Sentences are not illegal simply because the imposition of the first sentence will render the serving of the subsequent sentences impossible. As long as the sentence is within the statutory limit, it is legal. *Commonwealth v. Samuels*, 516 Pa. 300, 304, 532 A.2d 404, 406 (1987).

■ Finally, appellant argues that the sentence is unconstitutional under both the Federal and Pennsylvania constitutions because it amounts to cruel and unusual punishment and is disproportionate to the crimes committed. These claims provide no relief. First, the constitutionality of the Pennsylvania death penalty statute has repeatedly been upheld. *Commonwealth v. Hardcastle*, 519 Pa. 236, 546 A.2d 1101 (1988), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990); *Zettlemoyer, supra*, at 500 Pa. 16, 454 A.2d 937. Thus, this claim is meritless.

With respect to appellant's proportionality claim, pursuant to our statutory obligation under 42 Pa.C.S. § 9711(h)(3)(i), we have reviewed the sentence of death and have determined that it is not "the product of passion, prejudice or any other arbitrary factor." Additionally, pursuant to 42 Pa.C.S. § 9711(h)(3)(iii), we have determined that the sentence of death imposed in this case is not excessive or disproportionate in relation to the penalty imposed in similar cases. *Zettlemoyer, supra* at 63, 454 A.2d at 961. In making this determination, we have compared the sentence imposed with sentencing data compiled and monitored by the Administrative Office of Pennsylvania Courts. *See Commonwealth v. Frey*, 504 Pa. 428, 443, 475 A.2d 700, 707–08, *cert. denied*, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). Appellant's claim that the sentences of death are excessive or disproportionate is rejected.

Accordingly, the judgment of sentence of death is affirmed.[24]

24. The prothonotary of the Supreme Court is directed to transmit the complete record in this case to the Governor. 42 Pa.C.S. § 9711(i).

CAPPY, J., concurs in the result.

MONTEMURO, J., is sitting by designation.