**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ERIC MALOY | |
| Appellant | No. 1088 EDA 2013 |

Appeal from the Judgment of Sentence March 15, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012010-2011

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED AUGUST 29, 2014**

Appellant, Eric Maloy, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial conviction of rape of a child under thirteen, involuntary deviate sexual intercourse ("IDSI") with a child under thirteen, endangering the welfare of a child, corruption of a minor, and indecent assault.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises the following issue for our review:

_____

[1] 18 Pa.C.S.A. §§ 3121(c), 3123(a)(6), 4304(a)(1), 6301(a)(1)(i), and 3126(a)(7) respectively.

_____

*Retired Senior Judge assigned to the Superior Court.

DID THE COURT OF COMMON PLEAS ERR BY ADMITTING THE TESTIMONY OF THE COMMONWEALTH'S PRIOR/OTHER BAD ACTS WITNESSES PURSUANT TO PENNSYLVANIA RULE OF EVIDENCE 404(B)?

(Appellant's Brief at 4.)

Appellant urges that evidence of prior acts is generally admissible to prove the identity of the perpetrator; however, there is no issue of identification in this case. Appellant also claims the Commonwealth did not show enough factual similarities between the prior child molestation allegations and this case which would tend to prove common scheme or plan. Appellant suggests that the few factual similarities which do exist are merely common elements of all rape cases. Appellant further insists the time gap between the prior allegations and this crime was too lengthy to establish the common plan exception. Appellant avers each allegation involved a different person and different circumstances. Appellant reasons there is no logical connection between the prior alleged victims and the victim in this case. Appellant contends that, to establish this logical connection, all incidents of child molestation must have occurred no more than a few days apart. Appellant submits evidence of the prior child rape allegations were inadmissible under the common plan, scheme, or design exception. Likewise, Appellant asserts the prior child rape allegations were inadmissible to show his intent, motive, knowledge or state of mind. Based upon the foregoing, Appellant maintains admission of the prior child rape allegations denied him a fair trial. Additionally, Appellant submits that all

previous allegations were inadmissible under the doctrine of collateral estoppel, because he was not convicted of the offenses charged in the prior matters. Appellant insists the trial court abused its discretion in allowing this testimony because the prejudicial nature of the evidence far outweighed its probative value. Appellant concludes he is entitled to a new trial without the testimony at issue. We disagree.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Drumheller*, 570 Pa. 117, 135, 808 A.2d 893, 904 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003) (quoting *Commonwealth v. Stallworth*, 566 Pa. 349, 363, 781 A.2d 110, 117 (2001)).

> Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

*Drumheller, supra* at 135, 808 A.2d at 904 (quoting *Stallworth, supra* at 363, 781 A.2d at 117-18).

"Evidence of prior crimes or bad acts may not be presented at trial to establish the defendant's criminal character or proclivities." *Commonwealth v. Hudson*, 955 A.2d 1031, 1034 (Pa.Super. 2008), *appeal denied*, 600 Pa. 739, 964 A.2d 1 (2009). Rule 404 governs the admissibility of other crimes evidence as follows:

**Rule 404. Character evidence not admissible to prove conduct; exceptions; other crimes**

\* \* \*

**(b) Other crimes, wrongs, or acts.**

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

(2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

(3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

\* \* \*

Pa.R.E. 404(b)(1)-(3).

This Court has found evidence of prior bad acts admissible when it establishes a common plan, scheme, or design. *Commonwealth v. Judd*, 897 A.2d 1224, 1232 (Pa.Super. 2006), *appeal denied*, 590 Pa. 675, 912 A.2d 1291 (2006) (internal citations omitted).

The following factors should be considered in establishing similarity:

- the elapsed time between the crimes;

- the geographical proximity of the crime scenes; and

- the manner in which the crimes were committed.

*Id.* at 1231-32 (internal citations, quotation marks, and footnote omitted). Evidence is properly admitted under the common plan, scheme, or design exception where all of the alleged acts are of a similar character. ***Commonwealth v. Booth***, 435 A.2d 1220, 1226 (Pa.Super. 1981) (holding pattern repeated in each criminal episode carried "mark of distinction;" evidence was admissible under common plan, scheme, design exception). To establish a common plan or scheme, courts must examine the details of the prior and present incidents for shared factual similarities in their entirety. ***Commonwealth v. O'Brien***, 836 A.2d 966, 970-71 (Pa.Super. 2003). "A comparison of the crimes must establish a logical connection between them." ***Commonwealth v. Arrington***, 86 A.3d 831, 842 (Pa. 2014) (quoting ***Commonwealth v. Miller***, 541 Pa. 531, 664 A.2d 1310, (1995)). A common plan, scheme, or design may be relevant to establish any element of a crime. ***Commonwealth v. Einhorn***, 911 A.2d 960 (Pa.Super. 2006), *appeal denied*, 591 Pa. 723, 920 A.2d 831 (2007).

"In order for evidence of prior bad acts to be admissible as evidence of motive, the prior bad acts must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." ***Commonwealth v. Reid***, 571 Pa. 1, 35, 811 A.2d 530, 550 (2002), *cert. denied*, 540 U.S. 850, 124 S.Ct. 131, 157 L.Ed.2d 92 (2003). Evidence of prior bad acts is admissible "in situations where the bad acts were part of a chain or sequence of events

that formed the history of the case and were part of its natural development." **Id.**

Importantly, "Evidence of prior bad acts is admissible in rebuttal to dispel false inferences raised by the defendant or the defendant's witnesses." **Commonwealth v. Powers**, 577 A.2d 194, 196 (Pa.Super. 1990). "The fact that the false inferences may have arisen through testimony on cross-examination does not alter the analysis." **Id.** **See also Commonwealth v. Barnett**, 50 A.3d 176, 190 (Pa.Super. 2012), *appeal denied*, ___ Pa. ___, 63 A.3d 772 (2013) (reiterating that courts have discretion to decide order of presentation of evidence at trial).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Donna M. Woelpper, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented, with one exception that we will discuss presently. (**See** Trial Court Opinion, filed June 18, 2013, at 5-10) (finding: victims were all African American male children; victims were all anally penetrated; Appellant was either godfather or uncle to each victim; victims' families perceived Appellant as trusted caretaker of all victims; all victims lived in Appellant's residence during time when molestations allegedly occurred; all incidents occurred at night after victims had fallen asleep; time between incidents was not dispositive; Appellant historically and consistently portrayed all victims

as liars and all allegations as fabrications; Appellant implied present rape allegation was fabricated on behalf of his life partner; prior acts established common plan or scheme; repeated use of male children to satisfy sexual desires demonstrated Appellant's state of mind; Appellant's prior acts rebutted inference that current victim and witnesses fabricated charges; probative value of prior rape allegations outweighed prejudicial effect).  The record supports the trial court's decision; therefore, we see no reason to disturb it on the grounds alleged.  **See Drumheller, supra**.

The one argument the trial court opinion did not address was Appellant's claim that the proffered evidence of bad acts which resulted in acquittals is precluded under **Dowling v. United States**, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 780 (1990).  Initially, we observe that any issues not raised in Appellant's Rule 1925(b) statement are waived for purposes of appellate review.  Pa.R.A.P. 1925(b)(4)(vii).  The purpose of a Rule 1925(b) statement is to provide the trial court with an opportunity to provide the appellate court with an explanation of its ruling.  **Commonwealth v. Blystone**, 617 A.2d 778 (Pa.Super. 1992).  Incorporating issues into a Rule 1925(b) statement by reference to another document constitutes a failure to comply with letter and spirit of Rule 1925(b).  **Commonwealth v. Osteen**, 552 A.2d 1124, 1126 (Pa.Super 1989).

Instantly, Appellant does mention his **Dowling** argument in his June 6, 2012, motion *in limine*.  Nevertheless, Appellant's Rule 1925(b) statement

does not specify this argument. Rather, Appellant incorporated his June 6 motion by reference in his Rule 1925(b) statement. Additionally, the trial court opinion does not address the issue. Therefore, Appellant arguably failed to preserve it for our review. ***See id.***

Moreover, Appellant misinterprets ***Dowling***. The issue presented in ***Dowling*** was whether evidence of prior bad acts admitted for purposes of suspect identification violated the doctrine of collateral estoppel when Appellant was acquitted of those prior acts. ***Dowling, supra*** at 348, 110 S.Ct. at 673, 107 L.Ed.2d at ___. The U.S. Supreme Court held that collateral estoppel did not preclude the government from entering evidence of prior bad acts, even though they resulted in acquittals, because admissibility does not require proof beyond a reasonable doubt. ***Id.*** at 350, 110 S.Ct. at 673, 107 L.Ed.2d at ___. The ***Dowling*** Court did not limit its holding to prior acts evidence admitted only to prove a suspect's identity. Consequently, ***Dowling*** does not stand for the limited proposition Appellant asserts. Thus, even if properly preserved, this particular claim lacks merit. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/29/2014

**FILED**

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

JUL 1 8 2013

Criminal Appeals Unit
First Judicial District of PA

COMMONWEALTH OF
PENNSYLVANIA

:
:
:
:

CP-51-CR-0012010-2011

VS.

CP-51-CR-0012010-2011 Comm. v. Maloy, Eric
Opinion

SUPERIOR COURT
NO. 1088 EDA 2013

ERIC MALOY

7043053701

## OPINION

WOELPPER, J.                                                    JULY 18, 2013

### I.    PROCEDURAL OVERVIEW

On December 3, 2012, a jury found defendant Eric Maloy ("Defendant") guilty of rape of

a child under thirteen,[1] involuntary deviate sexual intercourse with a child under thirteen

("IDSI"),[2] endangering the welfare of a child ("EWOC"),[3] corruption of a minor,[4] and indecent

assault.[5] On March 15, 2013, the trial court found that Defendant met the criteria for a sexually

violent predator[6] and sentenced him to an aggregate of thirty-six to seventy-two years of

incarceration.[7] The court also ordered that Defendant receive sex offender treatment.

---

[1] 18 Pa. C.S. § 3121(c).
[2] 18 Pa. C.S. § 3123(b).
[3] 18 Pa. C.S. § 4304.
[4] 18 Pa. C.S. § 6301(a)(1)(i).
[5] 18 Pa. C.S. § 3123.
[6] In making this determination, the court considered the expert report and testimony of Barbara Ziv, M.D., a member of the Sexual Offenders Assessment Board. In both her report and live testimony, Dr. Ziv opined that Defendant met the criteria for a sexually violent predator.
[7] The court fashioned Defendant's sentence as follows: eighteen to thirty-six years of incarceration on the rape charge; eighteen to thirty-six years of incarceration on the IDSI charge; two to four years of incarceration on the EWOC charge; one to two years of incarceration on the corruption of a minor charge; and two to four years of incarceration on the indecent assault charge. The incarceration sentence on the IDSI charge was ordered to run

1

Defendant filed a *pro se* notice of appeal on April 10, 2013, and subsequently retained private counsel to represent him.[8] Defendant's statement of errors complained of on appeal ("Statement") alleges that in granting the Commonwealth's "Motion to Admit Other Acts of Defendant" ("Motion"), and subsequently admitting evidence of those other acts at trial, the trial court committed "prejudicial error and deprived [Defendant] of due process and a fair trial." "Statement" at ¶ 4. For the reasons below, the court's judgment of sentence should be affirmed.

## II.     FACTUAL BACKGROUND

The Commonwealth's Motion alleged the following facts, which were consistent with the testimony subsequently presented at trial. The complainant, S.W., alleged that when he was between five and six years old, Defendant (who was his godfather), anally and orally raped him. Motion at p. 3 at ¶ 2; Notes of Testimony ("N.T."), Nov. 28, 2012 at pp. 16-17. These assaults occurred at Defendant's house while he was charged with taking care of S.W. Motion at p. 3, ¶ 1; N.T., Nov. 28, 2012 at p. 34. In the summer of 2011, S.W.'s family was unable to send him to summer camp, so they sent him to spend the majority of the summer with Defendant instead. Motion at p. 3, ¶ 1; N.T., Nov. 28, 2012 at p. 74. At the end of that summer, S.W. told Defendant's then fifteen-year-old son that Defendant had "sucked [S.W.'s] dick," "made [S.W.] suck [Defendant's] dick," and "put [Defendant's] dick in [S.W.'s] butt." Motion at p. 3, ¶ 2; N.T. Nov. 28, 2012 at pp. 17-18. S.W. also told Defendant's son that "piss" and "white stuff" came out of Defendant's penis and onto the couch. Motion at p. 3, ¶ 3; N.T., Nov. 28, 2012 at p. 21. Testimony at trial revealed that S.W. told Defendant's then-partner about the assaults as well. N.T., Nov. 28, 2012 at pp. 101-02.

---

consecutive to the sentence on the rape charge. All remaining sentences were ordered to run concurrent to the rape charge.

[8] Jennifer Ann Santiago, Esquire was initially appointed as Defendant's appeal counsel, but Defendant subsequently retained Jason Kadish, Esquire to represent him on appeal. Mr. Kadish had also served as Defendant's trial counsel in this matter.

2

Defendant's son told his mother (Defendant's ex-wife) about S.W.'s allegations, and they reported the alleged assaults to the police. Motion at p. 3, ¶ 4; N.T., Nov. 28, 2012 at p. 58. Law enforcement notified the Department of Human Services ("DHS") of the allegations, and a DHS representative immediately went to Defendant's home to assess S.W.'s safety. Motion at p. 4, ¶ 5; N.T., Nov. 29, 2012 at pp. 77-80. When the DHS worker explained to Defendant that he had been asked to investigate S.W.'s welfare, Defendant responded that he had not seen S.W. in approximately two months and thought he may have gone to New Jersey. Motion at p. 4, ¶ 5; N.T., Nov. 29, 2012 at p. 80. After speaking with DHS, Defendant instructed his partner to take S.W. (who had been at Defendant's house during the conversation with DHS) out to the backyard. Motion at p. 4, ¶ 5; N.T., Nov. 28, 2012 at p. 105. Having learned of the alleged assaults, however, Defendant's partner took S.W. next door instead. N.T., Nov. 28, 2012 at p. 106.

DHS and law enforcement observed S.W. exiting Defendant's neighbor's home and took him for a forensic interview at the Philadelphia Children's Alliance. Motion at p. 4, ¶¶ 5-6; N.T., Nov. 29, 2012 at pp. 68; 85. S.W. was also given an acute sexual assault examination at the Children's Hospital of Philadelphia, including the collection of forensic evidence. Motion at p. 4, ¶ 6; N.T., Nov. 29, 2012 at pp. 12-13. Though the collection results did not test positive for the presence of sperm, and the physical examination did not reveal any visible signs of abuse, these results did not contradict the reported assaults. Motion at p. 4, ¶ 6; N.T., Nov. 29, 2012 at pp. 16-20.

A warrant was subsequently secured for Defendant's arrest. Motion at p. 4, ¶ 7; N.T. Nov. 29, 2012 at p. 120. Law enforcement made several unsuccessful attempts to arrest Defendant at his residence. Motion at p. 4, ¶ 7; N.T., Nov. 29, 2012 at p. 120-21. Only after the

3

Fugitive Task Force of the United States Marshals became involved was Defendant found and arrested at a Philadelphia motel. Motion at p. 4, ¶ 7; N.T., Nov. 29, 2012 at p. 138-40.[9]

The Commonwealth filed the contested motion on February 22, 2012, alleging the above-outlined facts and seeking to admit testimony that Defendant had anally raped four other minor boys in the past. The basis for seeking to admit this testimony was to show a common scheme, plan, or pattern, establish Defendant's motive and intent, illustrate the history of the case, and refute any defense that S.W. was fabricating the alleged events. Motion at p. 4. The facts of the "other acts" as alleged in the Motion are reproduced in full below.

1. In July, 1998, [T.B.] (then 19-years-old), disclosed that his Godfather, the defendant, had been molesting him since he was thirteen. [T.B.] lived with the defendant from the age of thirteen because his dad was abusive and his mom was deceased. Specifically, [T.B.] disclosed that the defendant frequently anally raped him inside of his home over the course of those six years. The defendant gave a statement to police arguing that [T.B.] fabricated allegations of sexual assault against the defendant because of a disagreement over [T.B.'s] social security money. (The defendant stated that he managed [T.B.'s] social security money because [T.B.] "was found to be mentally incompetent by the state to handle his money.") The defendant was arrested and charged with sexually abusing [T.B.] under CP-51-CR-1107591-1998. The case was held for court and was then consolidated for a jury trial with the matter involving [R.W.] (described below). The defendant was granted a judgment of acquittal after prosecutors made the opening statement on the matter, but could not locate the victim for his testimony.[10]

2. In October, 1998, [R.W.] (then 14-years-old), disclosed that his uncle, the defendant, attempted to anally rape him once at his mother's home, and anally raped him another time in the defendant's home. The defendant gave a statement to police arguing that [R.W.] fabricated the allegations of sexual assault against the defendant because [R.W.'s] father hates the defendant. The defendant was arrested and charged with sexually abusing [R.W.] under CP-51-CR-1008311-1998. This case was held

---

[9] The Marshals received information on Defendant's whereabouts after having placed Defendant's fugitive profile in the *Philadelphia Daily News.* N.T., Nov. 29, 2012 at p. 139.

[10] On November 29, 2012, the Commonwealth called T.B. to testify at Defendant's trial. T.B. testified that while he was living with Defendant, Defendant anally raped and beat him on multiple occasions, generally after T.B. had gone to sleep. N.T., Nov. 29, 2012 at pp. 164-167. T.B. testified that he failed to appear at Defendant's trial for those assaults because Defendant had taken him out of state at the time of trial. *Id.* at 180.

for court and was then consolidated for trial with the matter involving [T.B.]. The matter was tried by jury, and the defendant was found not guilty.[11]

3. In December, 1992, [S.S.] (then 14-years-old), disclosed that the defendant anally raped him on numerous occasions. [S.S.] had been living with the defendant for approximately two months because he was having problems at home and his mother was in an inpatient drug rehabilitation program outside the city of Philadelphia. The defendant gave a statement to police insinuating that [S.S.] fabricated the allegations of sexual assault against the defendant because of a conflict between the defendant and [S.S.'s] family. The defendant was arrested and charged with sexually abusing S.S. under CP-51-CR-0300131-1993. The case was held for court after a preliminary hearing. Records indicate that [S.S.] was then moved to Allentown for fear of his safety. However, prior to trial the case was nolle prossed due to the inability to locate [S.S.] after the move.

4. In October, 1983, [R.L.], (then two-and-a-half-years old), disclosed to his grandmother that his babysitter, the defendant, put his "ding-dong" (penis) inside his butt when he was on the couch, laying on his stomach, and that it hurt. [R.L.'s] mother noticed "ripped skin" on [R.L.'s] anal area, and took him to the hospital and to the police. The defendant later admitted to anally penetrating the child, stating that he "acted out of vengeance towards the child's mother, his cousin's girlfriend, who had been mean to him." When asked why he chose to penetrated [sic] the child, rather than using some other form of retaliation or violence, the defendant was unable to give any explanation. The defendant was arrested and processed as a juvenile under docket number JV-0108356-1983. Records reflect that the defendant was committed to a delinquent institution (Loysville Youth Development Center) as a result of this case.

Motion at pp. 4-5.

On November 30, 2012, this court granted the Commonwealth's motion to admit testimony pertaining to the alleged assaults against T.B., R.W., and S.S., but denied the motion as to R.L. At the time of trial, however, the Commonwealth only secured the testimony of T.B. and R.W. Therefore, none of the allegations involving S.S. were admitted.

III. DISCUSSION

Contrary to Defendant's contention on appeal, the trial court properly admitted evidence of his prior alleged assaults against T.B. and R.W. for purposes of demonstrating that

---

[11] The Commonwealth also called R.W. to testify on November 29, 2012. R.W. testified that his uncle (Defendant) had anally raped him on multiple occasions, including at Defendant's house. N.T., Nov. 29, 2012 at p. 188-190. R.W. testified that at the time of these assaults, his parents were in the course of getting divorced. *Id.* at 200.

5

Defendant's alleged assaults on S.W. were part of a common scheme, plan, or pattern; establishing motive, intent, and opportunity to commit the assaults; and refuting any inference that S.W. had fabricated the allegations against Defendant. The trial court has broad discretion in determining what evidence to admit at trial, and its evidentiary decisions should be upheld absent an abuse of discretion. *Commonwealth v. Glass*, 50 A.3d 720, 725 (Pa. Super. Ct. 2012). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or an exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of the record." *Id.* at 725 (internal quotations omitted). Evidence of a defendant's past conduct may be admitted if done for a purpose other than to show bad character or his/her propensity to commit the current offense with which he/she is charged. *See Commonwealth v. Reese*, 31 A.3d 708, 723 (Pa. Super. Ct. 2011); Pa.R.Evid. 404(b)(1). Though not an exhaustive list, Pennsylvania Rule of Evidence 404 outlines purposes for which "other acts" evidence may be admitted, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Pa.R.Evid. 404(b)(2). Even if used for a recognized purpose, however, the evidence's probative value must outweigh any prejudicial effect. *Id.*

Evidence is not prejudicial in the context of the 404(b) analysis merely because it would have a harmful effect on a defendant's case. *See Commonwealth v. Dillon*, 925 A.2d 131, 141 (Pa. 2007). The court need not "sanitize the trial to eliminate all unpleasant facts" that are otherwise relevant. *Id.* To the contrary, "'unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Id.* (citing Pa.R.Evid. 403 cmt.).

6

Here, evidence introduced through T.B. and R.W. was relevant to establish Defendant's common scheme, plan, or design in sexually assaulting minor boys, including S.W. A common scheme, plan, or design is recognized when two or more acts took place in similar locations, involved similar victims, and involved similar acts against those victims. *See Commonwealth v. Aikens*, 990 A.2d 1181, 1185-86 (Pa. Super. Ct. 2010), *appeal denied*, 4 A.3d 157 (Pa. 2010). In *Aikens*, the appellant had asked his fourteen-year-old daughter (the complainant) to watch a pornographic movie with him. *Id.* at 1182-83. The complainant told the appellant that she did not want to watch the movie and turned her head away. *Id.* at 1183. The appellant then began massaging the complainant's shoulders, thighs, buttocks, and genital area. *Id.* The complainant got up and went into the bathroom. *Id.* When she returned, the appellant was touching his exposed penis. *Id.* The complainant sat back on the bed and turned her back toward the appellant. *Id.* He attempted to unfasten her pants, but she stopped him, and he proceeded to grope her and grind against her. *Id.* At trial, the Commonwealth called the appellant's daughter from another relationship to testify. *Id.* This witness testified that fifteen years prior to the subject assault, when she was fifteen years old, she spent the night at the appellant's apartment, where he watched a pornographic movie and then raped her. *Id.*

On appeal, the Superior Court noted the "lengthy" time lapse between the subject offense and the prior act. *Id.* at 1186. The Court also noted, however, that "remoteness is merely one factor to be considered in determining admissibility; the importance of the gap in time is inversely proportional to the similarity between the crimes." *Id.* Because the abuse "was perpetrated in an identical manner on victims with identical characteristics in an identical setting," the remoteness of the prior act "was not determinative of the issue." *Id.* Furthermore, the striking similarities in the victims' ages, relationships to the appellant, circumstances of the

7

contact, and geographical location of the attack, rendered the evidence's probative value greater than its prejudicial effect. *Id.*

Here, the alleged assaults against T.B. and R.W. were reported in 1998, almost thirteen years prior to S.W.'s allegations against Defendant. Weighed against this remoteness between the "other acts" and subject assaults, however, are a number of the similarities noted by the *Aikens* Court. First, the victims' identities were similar: each was an African American, minor male. Second, the geographic location of the incidents was the same: the assaults took place in Defendant's home, which had also become the temporary residence of T.B. and S.W. Third, the circumstances of the alleged contact were the same: each involved anal penetration. Fourth, the victims shared similar relationships to Defendant: the victims were minor boys who were either related to Defendant or who were Defendant's godsons, staying with him at times when their own families required assistance with childcare. It was in this capacity as a trusted caretaker, in a home where the boys should have felt safe, that Defendant assaulted the victims. Despite these striking similarities between the prior and subject allegations, the occurrences were nonetheless distinguishable by the jury, especially because they were presented through the testimony of three individual complainants. Therefore, the probative value of the evidence outweighed any risk that the jury would be unable to separate the evidence. *See Dillon*, 925 A.2d at 141 (court should consider whether evidence is likely to confuse the issues or mislead the jury).

The trial court also permitted admission of the evidence to establish Defendant's motive and intent when assaulting S.W. Other acts evidence is admissible to establish a defendant's state of mind at the time he/she committed the alleged offense(s). *See, e.g., Commonwealth v. Rivera*, 828 A.2d 1094, 1101 (Pa. Super. Ct. 2003), *appeal denied*, 842 A.2d 406 (Pa. 2004). Here, the Commonwealth charged Defendant with, *inter alia*, indecent assault, pursuant to 18

8

Pa.C.S. § 3126. The Commonwealth had the burden of proving that Defendant had indecent contact with S.W. "for the purpose of arousing sexual desire in the person or the complainant..." 18 Pa.C.S. § 3126(a). Evidence that Defendant had repeatedly targeted and used other minor boys under his care or supervision to arouse his "sexual desire" was probative of his intent and motive when engaging in similar conduct, and for a similar purpose, with S.W.

The prior acts evidence was also admissible to demonstrate Defendant's opportunity to sexually assault S.W. Through cross-examination, the defense insinuated the unlikelihood that Defendant would be able to assault S.W. in the small, crowded homes[12] without any of the other residents being placed on notice. N.T., Nov. 28, 2012 at pp. 69-70. Evidence that Defendant had similarly assaulted other minor boys in his home in the past was relevant to proving that Defendant did, in fact, have the opportunity to commit the assaults.

Finally, the evidence was admissible to refute any inferences that S.W.'s allegations were fabricated. *See Commonwealth v. Saxton*, 532 A.2d 352, 357 (Pa. 1987) ("One exception to the general prohibition is that the Commonwealth may introduce evidence tending to show prior offenses if the purpose is to rebut statements which create inferences favorable to the accused") (internal citation omitted). Through cross-examination, the defense raised a number of inferences suggesting that the allegations were unfounded. First, the defense questioned Defendant's son on his impression that S.W. told "a lot" of lies. N.T., Nov. 28, 2012 at pp. 71-72. Second, the defense questioned why S.W. continued to stay at Defendant's house and failed to promptly report the assaults until the end of August, 2011, if they had been occurring repeatedly. *Id.* at 47-48; 76. Third, the defense questioned the motives of Defendant's son and

---

[12] S.W. testified that he was assaulted at Defendant's first home (at 2617 Federal Street in Philadelphia), and also when Defendant moved to another home (at 5621 Washington Avenue, Philadelphia). N.T., Nov. 28, 2012 at pp. 27; 45; 67-68.

9

Defendant's former partner in seeing that the assaults were reported. The defense implied that Defendant's son may have wanted to assist in fabricating allegations against his father because he believed his father's homosexual lifestyle was "sinful." *Id.* at 80. Similarly, the defense suggested that Defendant's former partner may have been motivated to retaliate against Defendant because Defendant had been seeing another man. *Id.* at pp. 110-11. Given that witness credibility is of the utmost importance in sexual assault cases such as this one, where the case relies on circumstantial evidence, the court properly found that the probative value of this "other acts" evidence outweighed its prejudicial effect.[13] *See Commonwealth v. Gordon*, 673 A.2d 866, 870 (Pa. 1996) (where evidence of sexual assault is uncorroborated, "it is fair to conclude that the other crimes evidence is necessary for the prosecution of the case").

## IV.  CONCLUSION

For the reasons above, the court properly admitted the "other acts" evidence, and the judgment of sentence should be affirmed.

BY THE COURT:

DONNA M. WOELPPER, J.

---

[13] The court cautioned the jury both after T.B. and R.W.'s testimony, and again during charging, that the "other acts" evidence was for the limited purpose of showing Defendant's common scheme, plan, or pattern in committing the assaults, his motive, intent, and opportunity to do so, and to refute any defense that S.W. fabricated the allegations. N.T., Nov. 29, 2012 at pp. 186; 202-03; N.T., Nov. 30, 2012 at p. 63.

10

# IN THE COURT OF COMMON PLEAS
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## TRIAL DIVISION – CRIMINAL SECTION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0012010-2011 |
| | : | |
| | : | |
| | : | SUPERIOR COURT |
| vs. | : | NO. 1088 EDA 2013 |
| | : | |
| | : | |
| ERIC MALOY | : | |

## PROOF OF SERVICE

I hereby certify that I am this 18ᵗʰ day of July, 2013, serving the foregoing Opinion on the persons indicated below, by first class mail:

Jason C. Kadish, Esquire
Allan J. Sagot & Associates
Suite 1320, Three Parkway
Philadelphia, PA 19102

Hugh Burns, Assistant District Attorney
Chief, Appeals Unit
District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

Alyson M. Walkenstein, Esquire
Law Clerk to the Honorable
Donna M. Woelpper